IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 15-0416 WHA |
| Plaintiff, | |
| v. | |
| ENZO CESTONI, | **ORDER RE DEFENDANT'S MOTION TO DISMISS COUNT ONE AND MOTION TO ENFORCE *BRADY*** |
| Defendant. | |

## INTRODUCTION

A jury convicted defendant of two counts of being an illegal alien in possession of a firearm in violation of 18 U.S.C. 922(g). Following the jury verdict, an order vacated the jury verdict on the first count and dismissed the count without prejudice due to the government's failure to prove venue. The same order vacated the verdict on the second count and ordered a new trial due to the government's *Brady* violation. Defendant now moves to dismiss the first count based on a theory of collateral estoppel and for an order enforcing *Brady*.

## STATEMENT

The facts of this case have been detailed at length in a prior order (Dkt. No. 150). Briefly, the initial indictment, returned by the grand jury in August 2015, charged defendant Enzo Cestoni with being an illegal alien in possession of a firearm and co-defendant Claudio Maciel with being a felon in possession of the same gun all following an altercation at Blondie's Bar in San Francisco on July 7, 2015. Maciel pled guilty in February 2016.

In March, the grand jury returned a superseding indictment, adding a second alien in possession charge against Cestoni based on a photograph posted on Cestoni's Instagram account on July 4, 2015. This became Count One, and the charge following the Blondie's incident became Count Two.

Following a trial in April 2016, a jury returned a guilty verdict on both counts. Cestoni then moved for a judgment of acquittal on Count One under Rule 29 and for a new trial under Rule 33. An order granted in part Cestoni's motion under Rule 29, ruling that no rational jury could find that the government had carried its burden to establish venue but holding that the proper remedy was dismissal without prejudice to a new indictment, rather than judgment of acquittal. The same order granted Cestoni's motion for a new trial on Count Two under Rule 33, because the government withheld exculpatory information from the defense in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

Following that order, the government obtained a warrant to search a mobile phone seized from Cestoni on the night of his arrest and obtained new photographic evidence purportedly reflecting Cestoni's possession on the night in question. The government also extracted metadata from some of those photographs purportedly establishing venue in this district. A prior attempt by the San Francisco Police Department to extract the same evidence had proven unsuccessful due to "technical difficulties" (Dawson Decl. ¶ 3, Exhs. A–C).

In September 2016, the grand jury returned a second superseding indictment charging Cestoni with two counts of being an alien in possession of a firearm in violation of Setion 922(g). Count One again charges Cestoni with possession on or about July 4, 2015.

**ANALYSIS**

1. **MOTION TO DISMISS COUNT ONE.**

Cestoni acknowledges that the Court has already rejected his argument that double jeopardy does not bar a retrial here and instead moves to dismiss Count One of the instant indictment on the grounds of collateral estoppel. The rule of collateral estoppel provides that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397

2

1 U.S. 436, 443 (1970). To determine whether collateral estoppel applies, we must perform the
2 following three-step analysis.

> (1) An identification of the issues in the two actions for the purpose of determining whether the issues are sufficiently similar and sufficiently material in both actions to justify invoking the doctrine; (2) an examination of the record of the prior case to decide whether the issue was "litigated" in the first case; and (3) an examination of the record of the prior proceeding to ascertain whether the issue was necessarily decided in the first case.

*United States v. Hernandez*, 572 F.2d 218, 220 (9th Cir. 1978).[*]

If the formal requirements of collateral estoppel have been established, it is within the district court's discretion whether or not to apply the rule. *United States v. Kaytso*, 868 F.2d 1920, 1022 (9th Cir. 1989).

In *Kaytso*, the defendant was charged with assault alleged to have occurred near the border between Arizona and Utah, and the government indicted the defendant in the District of Arizona. At trial, the victim unexpectedly became confused as to the precise location of the crime. At the close of the government's case, the defendant moved for a judgment of acquittal. The district court treated the motion as one to dismiss, then granted it without prejudice to a second indictment. When the grand jury returned a second indictment, the defendant moved to dismiss, arguing that collateral estoppel barred the government from attempting to establish venue in Arizona. The district court denied the motion.

Our court of appeals held that the formal elements of collateral estoppel had been established but that the district court's declination to apply collateral estoppel "on a ground wholly unrelated to factual guilt or innocence" did not constitute an abuse of discretion. Thus, it affirmed the district court's denial of the defendant's motion. *Kaytso* acknowledged, however, that "the doctrine of collateral estoppel is not to be applied so narrowly in criminal cases that it operates unfairly to the accused." The government was not "entitled to repeated attempts to establish venue in a series of trials," but a single reindictment did not exceed the limits of due process. *Id.* at 1022.

---

[*] This order notes that in *Standefer v. United States*, 447 U.S. 10 (1980), the Supreme Court held that non-mutual collateral estoppel does not apply against the United States in the context of an acquittal of a co-defendant.

3

The order dismissing Count One of the first superseding indictment herein held that the government failed to establish venue. As in *Kaytso*, that holding was wholly unrelated to Cestoni's factual guilt or innocence. No decision in our circuit has ever applied collateral estoppel in these circumstances. Cestoni simply argues that our case is distinguishable from *Kaytso* because the government's failure followed from bare insufficiency of its evidence, not from the unexpected confusion of a witness. Thus, he argues, fundamental fairness requires that the government not be given a second bite at the apple.

Indeed, the government offers little explanation for why it could not have extracted the evidence it now intends to use to establish venue the first time around. Nevertheless, as in *Kaytso*, this order finds that the limits of due process will not be exceeded by allowing the government to prosecute this single reindictment with its purported additional evidence supporting venue. Cestoni's motion to dismiss Count One is **DENIED**.

### 2. MOTION TO ENFORCE *BRADY*.

The government has a self-executing due process obligation to disclose "evidence favorable to the accused . . . [that] is material either to guilt or to punishment." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Cestoni seeks an order compelling the government to immediately disclose all exculpatory information.

As stated, a prior order granted Cestoni's motion for a new trial on Count Two on the basis that the government suppressed certain exculpatory evidence. Specifically, the government suppressed statements made to probation by Selena Lennox, co-defendant Maciel's wife who had been found with the gun in question in her purse on the night of the Blondie's incident, that corroborated Cestoni's version of the events. Upon the revelation of these statements, the government adamantly defended its position, rather than conceding error. Indeed, the order granting Cestoni's Rule 33 motion stated:

> The Court is disappointed that government counsel have tried so hard to sweep away a clear-cut *Brady* violation rather than confess error. In case after case, our prosecutors have reminded judges on this bench that they are aware of their *Brady* obligations and will honor them (such that motions to enforce *Brady* should be denied). This tawdry episode casts doubt on how much we judges can rely on that theme.

4

Cestoni argues that beyond the *Brady* violations addressed in the order granting a new trial, the government also suppressed documents in Cestoni's immigration file. Specifically, although the government represented to the Court on numerous occasions that Cestoni was subject to a deportation order from September 2013, Cestoni's immigration lawyer had in fact successfully moved to set aside that deportation order and to have Cestoni's case reopened in July 2015 (after the charged events occurred). Counsel for Cestoni learned of this fact in May 2016, weeks after the order vacating the jury's verdict on Count Two. The government acknowledged that it possessed Cestoni's complete immigration file and knew in March 2016 of the July 2015 order setting aside Cestoni's deportation order (Dawson Decl. ¶ 3, Exh. B).

The parties dispute whether the omitted set-aside order would have had any exculpatory effect (or effect on whether Cestoni would have remained in custody) and whether or not Cestoni himself was already aware of that information anyway.

We now know as well that in September 2016, the government (after the first trial) informed defense counsel that more than one year earlier, the FBI agent assigned to this case had been told by an attorney in a different case that an associate of that attorney's client had information regarding some unspecified federal investigation in which the associate believed the government had "the wrong guys." Counsel for the government recently informed Cestoni they believed the associate was Nancy Sanchez — a witness of the Blondie's incident. The government recently contacted the attorney, who could no longer recall the "wrong guys" exchange. Sanchez herself has been unwilling to speak with the government. Enough information was available to the government while the comment remained fresh to have required its disclosure to the defense under *Brady*, so this is yet another disappointment.

The FBI agent in this case has testified inaccurately, to be generous, and has failed to turn over *Brady* material (the information laid out in the letter dated September 1, 2016). Government counsel should have done a better job in proactively enforcing *Brady* instead of assuming that the agent will do the right thing. Going forward, counsel must make affirmative inquiry and take positive steps to inform themselves of *Brady* material lurking in all plausible locations. And, they must err on the side of disclosure, not suppression. If government counsel

*or its agents* have information arguably covered by *Brady*, counsel must produce it to defense or to advise the Court via an *in camera* submission — and to do so in time for effective use by the defense.

As an additional remedy for the government's failure to timely turn over the information in the September 1 letter, with the attendant inability of the witnesses to now remember, the Court will allow the defense to subpoena them for trial and allow short under-oath examinations outside the presence of the jury before placing them, if the defense desires, on the stand before the jury.

**IT IS SO ORDERED.**

Dated:   October 14, 2016.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE